DECLARATION OF WARREN H. MARUYAMA

I, Warren H. Maruyama, declare and state as follows:

1.   I am the General Counsel of the Office of the United States Trade Representative ("USTR"). I have held this position since January 2007. I am an Original Classification Authority ("OCA"), as designated by the United States Trade Representative pursuant to an assignment of authority from the President under Executive Order 12,958, as amended by E.O. 13,292 (" the EO"). I make the following statements based on my personal knowledge, which in turn is based on a personal review of the records in the case file that USTR established to process the FOIA request in this case, and on information furnished to me in the course of my official duties.

Documents Withheld Under 5 U.S.C. Section 552(b)(1)

2.   The EO establishes procedures for classifying national security information. Section 1.1 of the EO authorizes an OCA to classify information owned, produced, or controlled by the United States Government if the information falls within one of eight classification categories specified in Section 1.4 of the EO, including paragraph (b), "foreign government information." USTR is withholding documents, including electronic mail messages, responsive to the Plaintiff's FOIA request on the basis that they are classified under Section 1.4(b). "Foreign government information" is defined in Section 6.1(r) of the EO as follows:

> information provided to the United States Government by a foreign government . . . with the expectation that the information . . . [is] to be held in confidence; [or] information produced by the United States Government pursuant to or as a result of a joint arrangement . . . requiring that the information . . . be held in confidence.

3.   The records that USTR has withheld from the Plaintiff on the basis that they contain

classified "foreign government information" consist of negotiation documents, including draft negotiating proposals and documents in support of such proposals, and associated e-mail messages that USTR negotiators and attorneys received from or transmitted to officials, including foreign government officials, in the course of planning for and carrying out negotiations to conclude an international Anti-Counterfeiting Trade Agreement ("ACTA"). The ACTA negotiations reflect a collective effort led by the United States and other governments to address the challenges of global counterfeiting and piracy. The ACTA will provide a framework for governments more effectively to combat piracy and counterfeiting through international cooperation and stronger enforcement practices and measures. Participants in the negotiations include Australia, Canada, the European Union and its Member States, Japan, Korea, Mexico, Morocco, New Zealand, Singapore, and Switzerland. A favorable outcome of these negotiations is in the U.S. economic interest.

4. Prior to circulating formal textual proposals, the United States and the other governments participating in the negotiations agreed to a written U.S. proposal of December 2007 " . . . that documents relating to the proposed Anti-Counterfeiting Trade Agreement (ACTA) will be held in confidence." (See Attachment A). Based on this agreement, I issued a memorandum to U.S. ACTA negotiators on February 8, 2008, noting that the governments participating in the ACTA negotiations had agreed to hold documents exchanged in the course of those negotiations in confidence. In the memorandum, I determined that all such documents were to be classified as Confidential Foreign Government Information. (See Attachment B).

5. The documents that USTR has withheld in this case reflect information that USTR negotiators and attorneys sent to or received from other governments in the course of the ACTA negotiations. Hence, they fall withing the scope of the documents that I determined to be

classified on February 8, 2008. USTR negotiators marked all textual proposals sent to other ACTA participants at the time they were prepared. I personally marked all of the remaining classified ACTA documents, including e-mail messages exchanged between USTR and foreign officials in the negotiations, as Confidential Foreign Government Information in the course of processing them in connection with the Plaintiff's FOIA request.

6. The agreement that governments reached to preserve the confidentiality of documents exchanged in the course of the ACTA negotiations is designed to enable officials of participating governments to engage in frank exchanges of views, positions, and specific negotiating proposals. The confidential nature of those exchanges will facilitate the resolution of differing national interests and perspectives and will lay the groundwork for an eventual agreement.

7. If the United States unilaterally discloses to the public documents that it and other participants have exchanged in confidence with regard to the ACTA negotiations, it will discourage further such exchanges, undermine trust in U.S. ACTA negotiators, and make it difficult or impossible to conclude an agreement. In my experience, foreign governments are typically willing to engage in the give-and-take of negotiations with the United States necessary to conclude trade agreements only if they can rely on assurances from the United States that negotiating texts – including requests, offers, position papers, and analyses – and other communications that it provides to or receives from its negotiating partners in the course of the negotiations will be protected from unilateral public disclosure. A unilateral disclosure by the United States of its exchanges with its ACTA negotiating partners would be a breach of the reciprocal confidentiality arrangements that the United States agreed would govern the negotiations.

8. In the event of such a breach, and the loss of trust that it would generate, our ACTA

negotiating partners would be more likely to adopt and maintain rigid negotiating positions unfavorable to U.S. economic interests, significantly reducing the prospects for eventual agreement on terms favorable to the United States. If the parties participating in the ACTA negotiations cannot rely on U.S. assurances of confidentiality, and thus come to expect that negotiating exchanges will be publicly divulged despite agreement by the United States to protect them, I believe that it will substantially reduce their room to negotiate and conclude an agreement on terms favorable to the United States.

9. The agreement calling for ACTA negotiating documents to be kept confidential applies to all of the withheld classified documents in their entireties. A unilateral release by the United States of any portion of those documents would breach that agreement. USTR has obtained the consent of participating governments to release certain ACTA documents, such as agendas and the confidentiality agreement itself, to the public. It is my conclusion that there are no segregable portions of any other of the withheld classified records that can be released.

## Post-Classification Authority

10. In addition to having original classifying authority, I am in the position designated by the USTR to decide whether to classify records that are subject to FOIA requests. At USTR, the General Counsel is one level below the USTR and is an Original Classification Authority. Therefore, at USTR, the General Counsel is precisely the type of senior official authorized by the Executive Order to conduct this review. In that capacity, I have reviewed, on a page-by-page basis, the withheld records that I have described above and have determined that they are classified in accordance with my February 8, 2008 determination.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed this 16 day of January 2009.

_____
Warren H. Maruyama

# ATTACHMENT A

## Maintaining Confidentiality of Documents

The policy underlying the following approach is to maintain the confidentiality of documents, while at the same time allowing our sides to develop negotiation positions and communicate internally and with each other.

First, we agree that documents relating to the proposed Anti-Counterfeiting Trade Agreement (ACTA) will be held in confidence. This means that the documents may be given only to government officials or persons outside government who participate in the party's domestic consultation process and have a need to review or be advised of the information in these documents. Anyone given access to the documents will be alerted that they cannot share the documents with people not authorized to see them. The United States plans to hold ACTA documents in confidence for a fixed period of time after negotiations conclude.

Second, while ACTA documents are confidential, we may mail, e-mail, fax, or discuss these documents over unsecured lines with the two groups of people mentioned above (i.e., government offices and persons with a "need to know"). We may also store these documents in a locked file cabinet or within a secured building; that is, the documents do not need to be stored in safes. We can also create and store these documents on unclassified computer systems.

Third, all parties will mark the documents they create in a manner that makes clear that the documents will be held in confidence. The United States plans to mark documents generated by us as "Confidential, Foreign Government Information – Modified Handling Authorized" and include a brief instruction following the marking on how the documents will be handled.

# ATTACHMENT B

EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE
WASHINGTON, D.C. 20508

February 8, 2008

## MEMORANDUM FOR ALL ANTI-COUNTERFEITING TRADE AGREEMENT NEGOTIATORS

From:       WARREN MARUYAMA  *WHM*
            General Counsel, Office of the United States Trade Representative

Subject:    Classification of Anti-Counterfeiting Trade Agreement Negotiating Documents

The Government of the United States and other foreign governments are entering into the negotiation of an Anti-Counterfeiting Trade Agreement. In connection with those negotiations the governments have agreed to hold documents exchanged in the course of those negotiations in confidence.

As an original classifying authority, I have determined that the negotiating documents, including the negotiating texts of the Anti-Counterfeiting Trade Agreement, are to be classified as Confidential Foreign Government Information pursuant to section 1.4(b) of Executive Order 12958, as amended.

The documents should be marked as Foreign Government Information to be treated as U.S. CONFIDENTIAL, Modified Handling Authorized. The documents will be declassified on February 8, 2018. The documents should cite this memorandum as the authority for classification and contain a short description of the modified handling which is authorized. A sample of this marking is enclosed.

This Document Contains Foreign Government Information to be treated as
**U.S. CONFIDENTIAL MODIFIED HANDLING AUTHORIZED***

Derived From: Classification Guidance dated February 8, 2008
Reason: 1.4(b)
Declassify on: February 8, 2018

* This document must be protected from unauthorized disclosure, but may be mailed or transmitted over unclassified e-mail or fax, discussed over unsecured phone lines, and stored on unclassified computer systems. It must be stored in a locked or secured building, room, or cabinet.

This Document Contains Foreign Government Information to be treated as
**U.S. CONFIDENTAL MODIFIED HANDLING AUTHORIZED***